UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

PHILLIP JAFFE and others similarly situated,

Plaintiffs,

- against -

CAPITAL ONE BANK, CAPITAL ONE SERVICES,
INC. AND CAPITAL ONE, F.S.B., WASHINGTON
MUTUAL BANK d/b/a JPMORGAN CHASE BANK,
N.A., d/b/a CHASE BANK, N.A. (Chase Bank),
CHASE BANK, USA, N.A., d/b/a CHASE
MASTERCARD (Chase Card), and AMERICAN
EXPRESS,

Defendants.

**ECF CASE**

09 Civ. 4106 (PGG)

**OPINION AND ORDER**

PAUL G. GARDEPHE, U.S.D.J.:

Pro se Plaintiff Phillip Jaffe's Complaint asserts violations of federal and state

laws arising from defendant credit card companies' alleged late posting of payments and

resulting fees and penalties.  The Complaint names Capital One Bank, Capital One Services, Inc.

and Capital One, F.S.B. (collectively, "Capital One"), Washington Mutual Bank, Chase Bank,

USA, N.A., and American Express.  Capital One has moved to dismiss under Fed. R. Civ. P.

12(b)(1) and 12(b)(6).  Chase has moved to dismiss under Fed. R. Civ. P. 12(b)(6).  American

Express has moved to dismiss under Fed. R. Civ. P. 12(b)(6) or, in the alternative, to strike the

class allegations under Fed. R. Civ. P. 23(d)(1)(D).  The Federal Deposit Insurance Company, in

its capacity as Receiver for Washington Mutual, has moved to substitute itself for Washington

Mutual and to dismiss without prejudice pursuant to 12 U.S.C. § 1821(d)(13)(D).  For the

reasons set forth below, Defendants' motions to dismiss will be GRANTED.

## BACKGROUND

Jaffe alleges that he opened credit card accounts with Capital One, Chase, and American Express "at different points in time."[1]  (Compl. ¶ 8)  "At some point," Jaffe observed that his credit card payments were not posted until several days after they were received by the Defendants.  (Compl. ¶ 9)  Jaffe cites only one example of late posting, however, alleging that he made an electronic payment to Capital One on February 24, 2007, to satisfy a credit card bill due on February 25, 2007, and that Capital One imposed a late fee on his account on February 26, 2007.  (Compl. ¶ 10)  Jaffe alleges that Defendants' alleged practice of posting payments late caused him to incur late fees and higher credit card fees and damaged his credit history.  (Compl. ¶ 13)

Jaffe brings this suit on his own behalf and on behalf of others similarly situated, including "[a]ll persons who have made payments . . . [to] Capital One Bank, Washington Mutual Bank and American Express" and "[a]ll persons who were victimized by adhesion contracts in that they had to go along with increases in interest rates or lose their cards."[2] (Compl. ¶¶ 18(a), 18(b))  Jaffe alleges that "there are in excess of 500 members of the proposed class" and claims that the fraud on the proposed class resulted in "Hundreds of Millions, if not, Hundreds of Billions for the card companies."  (Compl. ¶¶ 11, 18(c))  He also alleges that Capital One, Washington Mutual and American Express acted intentionally or with "extreme negligence" in failing to credit the accounts of credit card holders who made timely payments.  (Compl. ¶¶ 18(e)(b), 18(e)(c), 18(e)(d))  Jaffe also claims that these three defendants charged

---

[1]  Defendant Washington Mutual appears only in the "Class Allegations" section of the Complaint.

[2]  Defendant Chase, which is named repeatedly in Jaffe's individual claims, does not appear in the "Class Allegations."

higher interest rates to members of the proposed class and defamed them by lowering their credit scores.  (Compl. ¶¶ 18(e)(o), 18(e)(p), 18(e)(q))

The Complaint alleges causes of action for fraud (Counts 1-9), conversion (Count 10), unjust enrichment (Count 11), and for violations of the Fair Credit Billing Act, 15 U.S.C. § 1601 (Count 12).[3]

## DISCUSSION

Although Jaffe is proceeding pro se, he is an attorney.  (Compl. ¶ 18(e)(v).  A lawyer proceeding pro se is not entitled to the special consideration that courts customarily grant to pro se parties.  Harbulak v. County of Suffolk, 654 F.2d 194, 198 (2d Cir. 1981); Chira v. Columbia Univ., 289 F. Supp. 2d 477, 482 (S.D.N.Y. 2003).  Accordingly, the sufficiency of his pleadings will be judged according to the same standards applicable to represented parties.  See Harbulak, 654 F.2d at 198; Chira, 289 F. Supp. 2d at 482.

## I.     THE FDIC RECEIVER WILL BE SUBSTITUTED FOR DEFENDANT WASHINGTON MUTUAL AND THE ACTION AGAINST THE FDIC RECEIVER WILL BE DISMISSED WITHOUT PREJUDICE PURSUANT TO 12 U.S.C. § 1821(d)(13)(D)

Federal Rule of Civil Procedure 25(c) permits the substitution of a party in an action where there has been a transfer of interest.  On September 25, 2008, the Office of Thrift Supervision declared Washington Mutual insolvent and appointed the FDIC as Receiver pursuant to 12 U.S.C. § 1821(c)(2)(A)(ii).  See Christensen Decl. Ex. A.  When the FDIC is appointed as a receiver, it "steps into the shoes" of the failed financial institution.  O'Melveny & Myers v. FDIC, 512 U.S. 79, 86 (1994); see also 12 U.S.C. §§ 1821(d)(2)(A)(i), 1821(d)(2)(B)(i).  In the case of Washington Mutual, the FDIC effected a transfer of Washington

---

[3]  While the Complaint's introduction states that this action is brought for violations of the Fair Credit Reporting Act and the Fair Debt Collection Practices Act, the Complaint does not plead any causes of action under these statutes.  See Compl. at 12-15.

Mutual's operations through a Purchase and Assumption Agreement with J.P. Morgan Chase, N.A., entered into on September 25, 2008.[4]  (Christensen Decl. Ex. B)  Under the terms of the Purchase and Assumption Agreement, the FDIC Receiver retained liability for "borrower claims."  (Christensen Decl. Ex. B at 9)

The Complaint asserts claims of holders of credit cards issued by Washington Mutual, among other financial institutions.  (Compl. ¶¶ 8, 18(a))  These are "borrower claims" for which the FDIC Receiver retains liability under the Purchase and Assumption Agreement. See Christensen Decl. Ex. B at 9.  Because the FDIC Receiver has retained liability for the claims alleged in the Complaint, there has been a transfer of interest such that the FDIC Receiver is the appropriate Defendant.  See Fed. R. Civ. P. 25(c); Citytrust v. 1st & 90th Assoc. Co., No. 91 Civ. 5932 (KMW), 1992 WL 6178, at *1 (S.D.N.Y. Jan. 6, 1992) (allowing the substitution of a party where Plaintiff's interest in the action had been transferred to the FDIC Receiver).  Jaffe does not object to the FDIC Receiver taking the place of Washington Mutual in this action, see Pltf. Br. 1 n. 1, and the Court will order this substitution.

The Federal Institutions Reform, Recovery and Enforcement Act of 1989 ("FIRREA") sets forth an administrative process for asserting and resolving claims against the assets of failed financial institutions.  See 12 U.S.C. § 1821(d)(3) – (13).  FIRREA also dictates that no court has jurisdiction over such claims absent exhaustion of the administrative process outlined in the statute.  12 U.S.C. § 1821(d)(13); see also Intercontinental Travel Mktg. v. FDIC, 45 F.3d 1278, 1282 (9th Cir. 1994); IndyMac Bank, F.S.B. v. MacPherson, No. 09-CV-768 (ADS), 2009 WL 4289945, at *2-3 (E.D.N.Y. Dec. 1, 2009).

---

[4]  The Complaint refers to "Washington Mutual Bank d/b/a J.P. Morgan Chase Bank, N.A., d/b/a Chase Bank, N.A."  (Compl. at 1)  The d/b/a entities appear to be referenced only as successors to Washington Mutual and thus are distinct for pleading purposes from Defendant "Chase Bank, USA, N.A., d/b/a Chase Mastercard."

After the administrative claims process set forth in FIRREA is exhausted, the statute provides that claimants may bring a court action, but only "in the district or territorial court of the United States for the district within which the depository institution's principal place of business is located or the United States District Court for the District of Columbia (and such court shall have jurisdiction to hear such claim)."[5]  12 U.S.C. § 1821(d)(6)(A).

Jaffe filed an administrative claim on August 10, 2009.  (FDIC Supp. Br. 1)  The FDIC disallowed that claim on August 20, 2009, because "[t]he claims presented [were] not proven to the satisfaction of the Receiver pursuant to 12 U.S.C. §1821(d)(5)(D)."  (Christensen Decl. Ex. 1)  The FDIC notified Jaffe that he had 60 days to file a lawsuit asserting his claims in either the United States District Court for the District of Columbia or for the Western District of Washington, where Washington Mutual's principal place of business is located.  See id.

Under FIRREA, this Court is not one of the courts permitted to hear Jafffe's claims against the FDIC Receiver and does not have subject matter jurisdiction over those claims.  See Augienello v. FDIC, 310 F. Supp. 2d 582, 589-90 (S.D.N.Y. 2004).  Jaffe argues, however, that this Court has jurisdiction over his claims because FIRREA's provisions do not apply to affirmative defenses.  (Pltf. Oct. 1 Br. 1-3)  Jaffe's argument misses the point.  Subject matter jurisdiction is not an affirmative defense.  "Once challenged, the burden of establishing jurisdiction rests with the party asserting that it exists."  Augienello, 310 F. Supp.2d at 587.  Moreover, under Fed. R. Civ. P. 12(h)(3), "[i]f the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action."

---

[5]  While the statute permits a claimant to "continue an action commenced before the appointment of the receiver," 12 U.S.C. § 1821(d)(6)(A), this provision does not apply here because this action was filed on April 27, 2009, well after the FDIC Receiver's September 25, 2008 appointment.

Jaffe also seeks to distinguish the cases cited by the FDIC Receiver for the proposition that a claimant against a failed institution's assets must first exhaust his administrative remedies before seeking a judicial determination as to his claims.  (Pltf. Oct. 1 Br. 1)  He points out that the FDIC's cases "involve situations in which the FDIC has taken over the liabilities of those banks that have become insolvent and the claims that the FDIC addresses are only the claims of those injured by the insolvency of the defunct banks."  Id.  Although some of the cases cited by the FDIC arise in this context, at least one arises from pre-insolvency conduct. See Intercontinental Travel Marketing, 45 F.3d at 1281 (noting that the claims at issue involved a breach of the terms of a Merchant Bankcard Agreement that occurred prior to the appointment of the FDIC Receiver).  Moreover, Jaffe does not explain why claims arising out of an institution's insolvency would be subject to different statutory provisions than claims unrelated to the financial duress of a defendant institution.  Neither the statute nor case law draws such a distinction.

Given FIRREA's clear jurisdictional provisions, Jaffe's claims against the FDIC Receiver will be dismissed without prejudice for lack of subject matter jurisdiction.

## II.  <u>THE COMPLAINT FAILS TO STATE A CLAIM</u>

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  <u>Ashcroft v. Iqbal</u>, 129 S. Ct. 1937, 1949 (2009) (quoting <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544, 570 (2007)).  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  <u>Iqbal</u>, 129 S. Ct. at 1949.

"In considering a motion to dismiss . . .  the court is to accept as true all facts alleged in the complaint," <u>Kassner v. 2nd Ave. Delicatessen Inc.</u>, 496 F.3d 229, 237 (2d Cir.

2007) (citing <u>Dougherty v. Town of N. Hempstead Bd. of Zoning Appeals</u>, 282 F.3d 83, 87 (2d

Cir. 2002)), and must "draw all reasonable inferences in favor of the plaintiff." <u>Id</u>. (citing

<u>Fernandez v. Chertoff</u>, 471 F.3d 45, 51 (2d Cir. 2006)).

      "When determining the sufficiency of plaintiffs' claim for Rule 12(b)(6) purposes,

consideration is limited to the factual allegations in plaintiffs' . . . complaint, . . . to documents

attached to the complaint as an exhibit or incorporated in it by reference, to matters of which

judicial notice may be taken, or to documents either in plaintiffs' possession or of which

plaintiffs had knowledge and relied on in bringing suit." <u>Brass v. Am. Film Techs., Inc.</u>, 987

F.2d 142, 150 (2d Cir. 1993).

## A.    <u>The Complaint Fails to State a Claim Against Chase</u>

      In his opposition brief, Jaffe states:

> Plaintiff has no objection to the dropping of Chase as a Defendant
> if the Court should so decide.  We state to the Court that Plaintiff
> and the Class has no direct evidence or testimony against Chase.
> However, Chase has been noticed by the Class in their Complaint
> and the Class believes it more than likely that the causes of action
> that have been brought against Capital One and Amex are equally
> appropriate against the entity "Chase."  That is, on its own – and
> not as the bank that took over WaMu.  But as stated, Plaintiffs rely
> on the Court to make that decision.

(Pltf. Br. 1 n.1)

      Accordingly, Jaffe concedes that the Complaint's allegations as to Chase do not

meet the pleading requirements articulated in Federal Rule of Civil Procedure 8(a) and

elaborated upon by the Supreme Court in <u>Iqbal</u> and <u>Twombly</u> because they are not based on any

"direct evidence or testimony."  Jaffe's hunch that valid causes of action against Chase could be

brought does not amount to "a claim to relief that is plausible on its face." <u>Iqbal</u>, 129 S. Ct. at

1949.  Indeed, Jaffe's statements concerning Chase's possible wrongdoing constitute precisely

the sort of conclusory statements <u>Iqbal</u> makes clear will not suffice to sustain a pleading.  <u>See</u> <u>id.</u>

Accordingly, Jaffe's claims against Chase will be dismissed.

     **B.**     **The Complaint Does Not Meet the Pleading**
                  **<u>Requirements of Federal Rule of Civil Procedure 8(a)</u>**

     Federal Rule of Civil Procedure 8(a)(2) requires a plaintiff to set forth a "short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  This rule "does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation."  <u>Iqbal</u>, 129 S. Ct. at 1949 (quoting <u>Twombly</u>, 550 U.S. at 555).  A complaint is inadequately pled "if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'"  <u>Iqbal</u>, 129 S. Ct. at 1949 (quoting <u>Twombly</u>, 550 U.S. at 557.).  Moreover, "factual allegations must be enough to give the defendant fair notice of what the claim is and the grounds upon which it rests."  <u>Port Dock & Stone Corp. v. Oldcastle Ne., Inc.</u>, 507 F.3d 117, 121 (2d Cir. 2007) (citing <u>Twombly</u>, 550 U.S. 544).

     Here, the Complaint consists almost exclusively of assertions "devoid of further factual enhancement."  <u>See</u> <u>Iqbal</u>, 129 S. Ct. at 1949.  Indeed, Jaffe provides only one specific incident of alleged wrongdoing, involving Capital One's imposition of a "Past Due Fee" on February 26, 2007, when, he claims, he had electronically transferred payment to Capital One before the February 25, 2007 due date.  (Compl. ¶ 10)  While this allegation – made against Capital One alone – is factually sufficient under Rule 8(a)(2)[6], the Complaint alleges no specific incidents of wrongdoing by Defendants Washington Mutual, Chase, and American Express.[7]

---

[6]  As discussed below, this claim ultimately fails because Jaffe has not adequately pled a cause of action based on these facts.

[7]  In his opposition brief, Jaffe contends that this Court should look to the decisions of other courts for evidence of Defendants' wrongdoing.  Jaffe provides no legal support for this argument, however.  Indeed, the cases he cites for this proposition concern plaintiff arguments that press coverage, prior lawsuits, or regulatory filings should have put a party on inquiry

The Complaint does not give any indication of when these defendants committed alleged wrongdoing, nor does it provide any facts in support of the legal conclusions that Defendants acted "intentionally" and "wrongfully."  The Complaint thus presents the sort of "unadorned, the-defendant-unlawfully-harmed-me accusation[s]" forbidden in Iqbal.  See 129 S. Ct. at 1949.

Given the absence of factual support, the Complaint fails to give Defendants "fair notice" of the claims against them.  See Port Dock & Stone Corp., 507 F.3d at 121.  Although Jaffe has made claims of general misconduct, the Defendants cannot be expected to discern from the Complaint what specific incidents form the basis of his claims, nor can they know which Defendants are accused of what misconduct.

In his opposition brief, Jaffe argues that Twombly's pleading requirements apply only in limited circumstances.  (Pltf. Br. 10-11).  In support of this proposition, Jaffe cites to the Second Circuit's decision in Iqbal v. Hasty, 490 F.3d 143 (2d Cir. 2007).  (Pltf. Br. 10-11)  That decision was overturned by the Supreme Court in Ashcroft v. Iqbal, however, which makes clear that the "decision in Twombly expounded the pleading standard for all civil actions."  129 S. Ct. at 1953 (citations omitted).

Jaffe also argues that Defendants are required to submit evidence that they acted lawfully before their motions to dismiss can be granted.  He asserts that "it is more likely than not that the reason Defendants fail to produce that evidence is that the evidence would clearly support Plaintiff."  (Pltf. Br. 9-10)  Jaffe's argument, however, turns the pleading requirements of the Federal Rules of Civil Procedure on their head.  It is Plaintiff's burden to set forth a "short and plain statement of the claim showing that the pleader is entitled to relief."  In doing so,

---

notice.  (Pltf. Br. 12-14)  But Jaffe is not arguing here that other court decisions put the defendants on inquiry notice; instead he is mistakenly contending that they permit him to skirt the pleading requirements of Fed. R. Civ. P. 8(a).  See Brass, 987 F.2d at 150.

Plaintiff must satisfy the standards established by the Supreme Court in <u>Iqbal</u> and <u>Twombly</u>. The complaint here fails to meet these requirements.

      **C.**      **<u>The Complaint Fails to State a Claim for Fraud</u>**

      Even if the Complaint were not inadequate under the general pleading requirements of Rule 8(a)(2), the Complaint's fraud allegations would have to be dismissed because they do not meet the heightened pleading standard applicable to fraud claims.

      The elements of fraud under New York law[8] are:  (1) a misrepresentation or a material omission of fact which was false and known to be false by defendant; (2) made for the purpose of inducing the other party to rely upon it; (3) justifiable reliance of the other party on the misrepresentation or material omission; and (4) injury.  <u>Premium Mortg. Corp. v. Equifax Info. Servs., LLC</u>, 583 F.3d 103, 108 (2d Cir. 2009).

      Federal Rule of Civil Procedure 9(b) requires that a party alleging fraud or mistake "must state with particularity the circumstances constituting fraud or mistake.  Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally."  Fed. R. Civ. P. 9(b).

      Rule 9(b) represents a "relaxation" of the specificity requirement in pleading the scienter element of fraud claims, requiring only that they be "alleged generally."  <u>See</u> <u>Shields v. Citytrust Bancorp, Inc.</u>, 25 F.3d 1124, 1128 (2d Cir. 1994); Fed. R. Civ. P. 9(b).  However, the Second Circuit has made clear that this "relaxation… 'must not be mistaken for license to base claims of fraud on speculation and conclusory allegations.'"  <u>Id.</u> (quoting <u>O'Brien v. Nat'l Prop. Analysts Partners</u>, 396 F.2d 674, 676 (2d Cir. 1991)).  Accordingly, the Second Circuit has long required plaintiffs alleging fraud claims to "allege facts that give rise to a strong inference of

---

[8] The parties assume that New York law governs Jaffe's state law claims.  <u>See</u> Capital One Br. 8-13; American Express Br. 6, 9; Pltf. Br. 14.

fraudulent intent." Novak v. Kasaks, 216 F.3d 300, 307 (2d Cir. 2000); see also Shields, 25 F.3d at 1128.  A "strong inference" of fraud "may be established either (a) by alleging facts to show that defendants had both motive and opportunity to commit fraud, or (b) by alleging facts that constitute strong circumstantial evidence of conscious misbehavior or recklessness." Novak, 216 F.3d at 307.

The Complaint asserts nine causes of action for fraud.  (Compl. at 12-14)  None are pled with sufficient particularity to satisfy the heightened pleading standard of Rule 9(b).  Indeed, Jaffe fails to identify a single "misrepresentation or [] material omission of fact which was false and known to be false by defendant" upon which he or members of the proposed class relied.[9]  Nor does he allege anything beyond the most conclusory statement of intent by the Defendants, noting only in his first cause of action that "Defendants committed fraud when they with intent knew that Mr. Jaffe and the Class were powerless against their adhesion contracts. . . ."  (Compl. at 12)  "'Allegations that are conclusory or unsupported by factual assertions are insufficient'" to state a claim for fraud.  Premium Mortg. Corp., 583 F.3d at 108 (quoting ATSI Commc'ns, Inc. v. Shaar Fund, Ltd., 493 F.3d 87, 99 (2d Cir. 2007)).

Finally, Jaffe renews his argument that Defendants should have submitted evidence that they did not act improperly.  It is Plaintiff who is required to state his fraud claims with particularity under Rule 9(b), however, and Defendants are not required to submit evidence in moving to dismiss his claims for failure to do so.

---

[9]  In his opposition brief, Jaffe relies on Jordan v. Madison Leasing Company, 596 F. Supp. 707 (S.D.N.Y. 1984).  In that case, the court held that plaintiffs had adequately pleaded fraud – even though the "allegations are not as specific as might be desired" – because they had "set forth the particular accounting and audit procedures and principles which the auditors allegedly violated" and "defendants have certainly been given fair notice of what the [] claim is and the grounds upon which it rests. The averments clearly go beyond the conclusory allegations forbidden by Rule 9(b)."  Jordan, 596 F. Supp. 707, 711 (S.D.N.Y. 1984).  Jaffe has not made the kind of factual allegations cited in Jordan.

**D.**      **The Complaint Fails to State a Claim for Conversion**

Conversion is the "unauthorized assumption and exercise of the right of ownership over goods belonging to another to the exclusion of the owner's rights."  Vigilant Insurance Company of America v. Housing Authority of the City of El Paso, Texas, 87 N.Y.2d 36, 44 (1995).  "To withstand a motion to dismiss a conversion claim, a plaintiff must allege '(1) title to the property converted, or his right to possession of that property; (2) an act of conversion by the defendant; and (3) damages caused by the conversion.'"  Geldzahler v. Weaver, 327 F. Supp. 2d 258, 262 (S.D.N.Y. 2004) (quoting Brass, 780 F. Supp. at 1003).  "When the original possession is lawful, 'conversion does not occur until the defendant refuses to return property after demand or until he . . . disposes of the property.'"  Moses v. Martin, 360 F. Supp. 2d 533, 541 (S.D.N.Y. 2004) (quoting Schwartz v. Capital Liquidators, Inc., 984 F.2d 53, 54 (2d Cir. 1993)).

The Complaint alleges that "conversion of the Class' assets" took place after Defendants "collect[ed] payments from Mr. Jaffe and the Class [Defendants] failed to properly credit those accounts until several days later and thus credited Defendant's accounts at the high expense of the Class' accounts."  (Compl. at 14)  The Complaint does not and could not properly allege that Defendants were not entitled to the payments made by Jaffe in satisfaction of his credit card bills.  Defendants' possession of these payments, then, is "lawful."  A claim for conversion under these circumstances will lie only where a demand for return of the property is made, but no such demand is alleged here.  See Moses, 360 F. Supp. at 541.

Moreover, the Complaint does not include an allegation of "conversion," or the exercise of "an unauthorized dominion over the thing in question, to the alteration of its condition or to the exclusion of the plaintiff's rights."  See id.  Jaffe does not claim that he

retained a right to the money paid to Defendants, nor does he argue that they exercised

"unauthorized dominion" over the funds.  Instead, he contends only that Defendants were late in

applying payment to customers' accounts.  Accordingly, the Complaint fails to plead the

elements of a claim for conversion, and that claim will be dismissed.

   **E.**  **The Complaint Fails to State a Claim for Unjust Enrichment**

   "To prevail on a claim for unjust enrichment in New York, a plaintiff must

establish 1) that the defendant benefitted; 2) at the plaintiff's expense; and 3) that 'equity and

good conscience' require restitution."  Kaye v. Grossman, 202 F.3d 611, 616 (2d Cir. 2000).

"The 'essence' of such a claim 'is that one party has received money or a benefit at the expense

of another.'"  Id. (quoting City of Syracuse v. R.A.C. Holding, Inc., 258 A.D.2d 905, 685 (4th

Dep't 1999)).

   The Complaint alleges that "Defendants were Unjustly Enriched at the expense of

the Class when knowingly they enriched themselves with the Class' funds when after collecting

payments from Mr. Jaffe and the Class they failed to properly credit those accounts until several

days later."  (Compl. at 14)  Although the Complaint makes conclusory allegations about the

imposition of penalties and late fees, it fails to allege that Jaffe ever actually paid any money to

Defendants that was not in satisfaction of his own credit card debt.  Without such an allegation,

there is no reason to believe that Defendants received a benefit at Jaffe's expense, an element of

an unjust enrichment claim.  See Kaye, 202 F.3d at 616.

   The absence of an allegation that Defendants tangibly benefitted at Jaffe's

expense is especially troubling in light of the evidence offered by Capital One concerning the

one specific allegation set forth in the Complaint:  Capital One's imposition of a late fee on

February 26, 2007.  Capital One has submitted Jaffe's account statements from this period,

which demonstrate that although a late fee was imposed, it was later reversed, with no additional

fees or imposition of higher interest rates.[10]   (Cunningham Decl. Ex. 5)[11]   Thus, a claim for

unjust enrichment cannot be made out as to the February 2007 incident and allegations of other

incidents of unjust enrichment are insufficiently pled.

> ### F.   The Complaint Fails to State a Claim For
> ### <u>Violations of the Fair Credit Billing Act</u>

The Fair Credit Billing Act directs consumers to provide a creditor with notice of

billing errors within 60 days of the creditor's transmission of the statement containing the alleged

error.  15 U.S.C. § 1666(a).  The applicable regulation makes clear that the 60-day period begins

when the creditor has transmitted the first periodic statement that contains the alleged error.  12

C.F.R. § 226.13(b)(1).

A creditor's duties under the Fair Credit Billing Act are only triggered by receipt

of notice of the alleged error from the consumer.  15 U.S.C. § 1666(a); <u>Dawkins v. Sears</u>

<u>Roebuck and Co.</u>, 109 F.3d 241, 243 (5th Cir. 1997) (holding that Plaintiff failed to trigger

Defendant's obligations under 15 U.S.C. § 1666 because he submitted notice of the alleged error

more than 60 days after receipt of the first statement, and thus Defendant could not be found to

have violated the law); <u>Vrlaku v. Citibank</u>, Civ. No. 05-1720 (SRC), 2005 WL 2338852, at *5

(D.N.J. Sept. 22, 2005) ("[a] creditor's obligations under the FCBA are triggered upon receipt of

a letter that complies with 15 U.S.C. § 1666(a) <u>et seq.</u>)

---

[10]   Capital One contends that Jaffe does not have standing to bring a claim based on this incident
because he did not suffer additional fees or higher interest rates.  (Capital One Br. 5-6)  Because
the Court finds that Jaffe has failed to state a claim, it does not reach the standing issue.  The
Court notes, however, that Jaffe has pled harm other than fees and higher interest rates, including
negative credit reports.
[11]   These documents are properly before this Court because they are "documents either in
plaintiff['s] possession or of which plaintiff[] had knowledge and relied on in bringing suit."
<u>Brass</u>, 987 F.2d at 150.

Jaffe does not allege that he gave notice to any of the Defendants of billing errors pursuant to the provisions of 15 U.S.C. § 1666(a).  Indeed, the Complaint alleges only that "Capital One Bank, Washington Mutual Bank and American Express actions [sic] of not properly crediting the accounts caused Mr. Jaffe and the Class to be reported as being late with payments to the credit reporting agencies when if the accounts were properly and timely recorded the payments would have been made on time."  (Compl. at 14)  Absent proof that Jaffe abided by the notice requirements set forth in 15 U.S.C. § 1666(a), Defendants cannot be said to have any duties under the Fair Credit Billing Act.  See 15 U.S.C. § 1666(a); Dawkins, 109 F.3d at 243; Vrlaku, 2005 WL 2338852, at *5.

Even if Jaffe gave the appropriate notice to creditors, any claims he asserts under the Fair Credit Billing Act based on alleged violations occurring before April 27, 2008 would be time-barred.  15 U.S.C. § 1640(e) requires that any action for a violation of the Truth in Lending Act be brought "within one year from the date of the occurrence of the violation."  See Van Pier v. Long Island Sav. Bank, F.S.B., 20 F. Supp. 2d 535, 536 (S.D.N.Y. 1998).  This action was filed on April 27, 2009.  The only specific incident alleged in the Complaint occurred in February 2007.  (Compl. ¶ 10)  Jaffe may not assert a Fair Credit Billing Act claim based on this incident because the statute of limitations has expired.  See 15 U.S.C. § 1640(e); Van Pier, 20 F. Supp. 2d at 536.

Jaffe argues, however, that the Truth in Lending Act is a remedial statute that is to be liberally construed in favor of consumers – see Kurz v. Chase Manhattan Bank, 273 F. Supp. 2d 474, 477 (S.D.N.Y. 2003) – and that the notice provision in the Fair Credit Billing Act is illogical, pointing out that "[i]f a house is burglarized and if there is no one at home to report the burglary it is no less a crime."  (Pltf. Br. 14-15)  Jaffe's arguments are unpersuasive.  Although

the Truth in Lending Act is to be liberally construed, here the statutory language is clear:  the

duties of creditors such as the Defendants do not attach until the consumer has provided

appropriate and timely notice.  If Jaffe failed to provide such notice – and there is no evidence in

either the Complaint or in his opposition brief that he did provide notice – then the Defendants

have no obligations under the Fair Credit Billing Act, and Jaffe has failed to state a claim.

Jaffe also contends that his Fair Credit Billing Act claims cannot be time-barred

because "the Defendants' crime is ongoing" and "the Class is being unlawfully charged an array

of unlawful fees up to the present day."  (Pltf. Br. 16)  The case he cites for this proposition,

however, deals with tortious conduct in general, and not the timeliness of claims brought under

the Fair Credit Billing Act, which sets forth specific provisions regarding notice and the

applicable statute of limitations.  See Pltf. Br. 16 (citing Hamilton v. Smith, 773 F.2d 461, 467

(2d Cir. 1985)).

Furthermore, the Fifth Circuit rejected Jaffe's argument in Dawkins, 109 F.3d at

243, concluding that the Fair Credit Billing Act requires that the consumer give notice to the

creditor within 60 days of receipt of the first statement containing the alleged error.  109 F.3d at

243.  The Fifth Circuit held that Dawkins' argument that there had been a continuing violation

was unavailing in light of his failure to submit timely notice as required by the statute.  Id.

Similarly, Jaffe does not allege that he took the steps required by the statute after receiving the

first statement containing the alleged billing error.

For these reasons, Jaffe has failed to state a claim for violations of the Fair Credit

Billing Act.  Even if he had set forth such a claim, it would be time-barred to the extent based on

alleged violations occurring before April 27, 2008.

G.        **Requests for Damages and Attorney's Fees Are Not Causes of Action**

The Complaint alleges two "causes of action" requesting (1) damages for emotional distress and pain and suffering, and (2) attorney's fees.  These requests are not claims upon which relief may be granted; rather, they are potential forms of relief.  As such, they cannot stand as separate causes of action and will be dismissed.  See Saha v. Record, 177 A.D.2d 763, 766 (3d Dep't 1991).

III.    **THE COMPLAINT'S CLASS ALLEGATIONS WILL BE STRUCK, BECAUSE A PRO SE PLAINTIFF MAY NOT SERVE BOTH AS A CLASS REPRESENTATIVE AND AS COUNSEL FOR THE PROPOSED CLASS**

Federal Rule of Civil Procedure 23(d)(1)(D) provides that the court may "require that the pleadings be amended to eliminate allegations about representation of absent persons. . . ." Fed. R. Civ. P. 23(d)(1)(D).  Courts in this district have held that a motion to strike class allegations, such as that brought by Defendant American Express here, may be addressed "prior to the certification of the class if the inquiry would not mirror the class certification inquiry and if resolution of the motion is clear."  In re Initial Pub. Offering Sec. Litig., 21 MC 92 (SAS), 2008 WL 2050781, at *2 (S.D.N.Y. May 13, 2008); see also Rahman v. Smith & Wollensky Rest. Group, Inc., No. 06 Civ. 6198 (LAK)(JCF), 2008 WL 161230, at *3 (S.D.N.Y. Jan. 16, 2008); 5 JAMES WM. MOORE ET AL., MOORE'S FEDERAL PRACTICE § 23.145 (3d ed. 2010) ("A court may order deletion of portions of a complaint's class claims once it becomes clear that the plaintiffs cannot possibly prove the deleted portion of those claims.").

It is well settled law that a pro se plaintiff may not represent the interests of third parties.  Iannaccone v. Law, 142 F.3d 553, 558 (2d Cir. 1998); Pridgen v. Andresen, 113 F.3d 391, 393 (2d Cir. 1997); In re Texaco, 123 F. Supp. 2d at 172.  Thus, a pro se plaintiff may not bring an action in which he will serve as both class representative and class counsel.  Rodriguez

v. Eastman Kodak Co., 88 Fed. Appx. 470, 471 (2d Cir. 2004) (citing Iannaccone, 142 F.3d at 558); Williams v. Citibank, 565 F. Supp. 2d 523, 525 n. 4 (S.D.N.Y. 2008) (interpreting pro se plaintiff's complaint as asserting only causes of action on his own behalf in light of the prohibition on pro se plaintiffs representing the interests of third parties); 5 JAMES WM. MOORE ET AL., MOORE'S FEDERAL PRACTICE § 23.25 (3d ed. 2010) ("[A] pro se class representative cannot adequately represent the interests of other class members.  Moreover . . . an attorney may not bring a class action pro se because too close a relationship between the class representative and class counsel is a disqualifying conflict of interest."); see also Matassarin v. Lynch, 174 F.3d 549, 559 (5th Cir. 1999) (holding that a pro se plaintiff's "duty to represent class interests would impermissibly conflict with her chance to gain financially from an award of attorneys' fees"). The Complaint's class allegations cannot stand because Jaffe, as pro se plaintiff, seeks to serve both as class representative and as class counsel.

Jaffe argues that he should not be prevented from asserting class allegations and representing the proposed class because there is no conflict between his interests and those of the class.  (Pltf. Br. 20-22)  Jaffe ignores, however, the central conflict of interest that bars a pro se plaintiff from serving as counsel representing a class:  such a plaintiff's "duty to represent class interests . . . impermissibly conflict[s] with her chance to gain financially from an award of attorneys' fees."  See 5 JAMES WM. MOORE ET AL., MOORE'S FEDERAL PRACTICE § 23.25 (3d ed. 2010).  There is no doubt that this conflict is present here, as evidenced by the Complaint's request for attorney's fees.

As a pro se plaintiff, Jaffe may not represent the interests of third parties. Accordingly, the Complaint's class allegations will be struck pursuant to Federal Rule of Civil Procedure 23(d)(1)(D).

**IV.    PLAINTIFF'S REQUEST THAT THE COURT <u>SUA</u> <u>SPONTE</u> AMEND
THE COMPLAINT TO ADD A RICO CLAIM WILL BE DENIED**

In his opposition brief, Jaffe requests that "the Court on its own Motion [] add a
cause of action for <u>RICO</u> violations."  (Pltf. Br. 22-23)  This request is procedurally improper.
Under Federal Rule of Civil Procedure 15, a party seeking to amend a pleading to add a cause of
action after a responsive pleading has been filed must obtain his adversary's consent or obtain
leave of the court.  Fed. R. Civ. P. 15(a)(2).  The court will "freely give leave when justice so
requires."  <u>Id.</u>

Jaffe has offered no factual basis for a RICO claim under 18 U.S.C. § 1962.  To
establish such a violation, "a plaintiff must show (1) conduct (2) of an enterprise (3) through a
pattern (4) of racketeering activity."  <u>De Falco v. Bernas</u>, 244 F.3d 286, 306 (2d Cir. 2001)
(citations omitted).  These requirements "must be established as to each individual defendant."
<u>Id.</u>  "'Racketeering activity" is broadly defined in 18 U.S.C. § 1962 as encompassing a variety of
state and federal offenses including, <u>inter</u> <u>alia</u>, mail and wire fraud.  18 U.S.C. § 1961(1).  Jaffe
contends that the alleged posting of late charges by Defendants constitutes racketeering activity.
Jaffe may seek leave to amend his complaint to add a cause of action under 18 U.S.C. § 1962 if
he so chooses.  This Court cautions, however, that each element of such an allegation as to each
individual defendant must be appropriately pleaded or the motion for leave to amend will be
denied.

**V.    <u>PLAINTIFF MAY SEEK LEAVE TO AMEND THE COMPLAINT.</u>**

"Leave to amend should be freely granted, but the district court has the discretion
to deny leave if there is a good reason for it, such as futility, bad faith, undue delay, or undue
prejudice to the opposing party."  <u>Jin v. Metropolitan Life Ins. Co.</u>, 310 F.3d 84, 101 (2d Cir.
2002).  "[I]t is often appropriate for a district court, when granting a motion to dismiss for failure

to state a claim, to give the plaintiff leave to file an amended complaint." <u>Van Buskirk v. N.Y.</u> <u>Times Co.</u>, 325 F.3d 87, 91 (2d Cir. 2003) (citing <u>Branum v. Clark</u>, 927 F.2d 698, 705 (2d Cir. 1991).

    Jaffe may also seek leave to amend the Complaint with regard to his claims for fraud, conversion and unjust enrichment as to Defendants Capital One and American Express. Jaffe's proposed amended complaint must meet the pleading standards set forth in this opinion as to each element of these claims.  Jaffe may seek leave to amend the Complaint to allege Fair Credit Billing Act violations as to Defendants Capital One and American Express, but Jaffe must demonstrate that any such claim is timely and contains factual allegations demonstrating that the statutory notice provision is satisfied.

<u>**CONCLUSION**</u>

    For the reasons set forth above, Defendants' motions to dismiss are GRANTED as follows:

    (1)  The FDIC Receiver is substituted for Defendant Washington Mutual and Plaintiff's Washington Mutual-related claims are dismissed without prejudice.

    (2)  Plaintiff's claims against Defendant Chase are dismissed with prejudice.

    (3)  Plaintiff's fraud, conversion, unjust enrichment and Fair Credit Billing Act claims against Defendants Capital One and American Express are dismissed.  Plaintiff may seek leave to amend the Complaint within ten days (<u>i.e.</u>, by March 11, 2010) as to these claims and these defendants.

    (4)  Plaintiff's "causes of action" for damages and attorney's fees are dismissed, and the class allegations are struck from the Complaint.

The Clerk of the Court is directed to terminate the following motions – Docket

Nos. 4, 13, 18, 21 – and to terminate Washington Mutual and Chase as defendants.

Dated: New York, New York
      March 1, 2010

SO ORDERED.

Paul G. Gardephe
Paul G. Gardephe
United States District Judge